[No. 15812.   Department Two.   October 13, 1920.]

J. H. GWINN, *as Trustee in Bankruptcy of Blewett Harvester Company, Appellant,* v. JOHN S. HEYDON *et al., Respondents.*[1]

SALES (103) — WARRANTY—BREACH—EVIDENCE—SUFFICIENCY. An action on promissory notes given for the price of a new harvester to be shipped from the factory, and warranted to do good work, must fail for want of consideration and failure to deliver the machine, where it appears that the company sent from a neighbor's farm an old machine out of repair, with an expert to make it work, and who was unable to do so, and the contract was never consummated by acceptance of the order and the giving of a chattel mortgage as contemplated.

SAME (103). In such a case, the fact that the prospective purchaser paid the wages of the expert after the first few days while trying to make the harvester work satisfactorily, does not show that the machine was delivered by the company.

SAME (118)—WARRANTY—BREACH—WAIVER BY FAILING TO GIVE NOTICE. In such a case, the failure to give written notice to the company within six days as to the failure of the machine to do good work, as provided in the contract, so that an expert could be sent to remedy the defects, is not a waiver of the warranty, where the company had notice of the defects and its expert was already at work on the machine, and before the expiration of six days after the expert finished, the company brought suit on the note.

SAME (115)—WARRANTY—BREACH—OPPORTUNITY TO REMEDY DEFECTS—WAIVER OF CONDITION. In such a case, the requirement that the purchaser deliver the machine, if defective, at a certain place, is waived where the company, after notice of breach of the warranty, denied the breach and demanded payment, threatening suit to enforce the same.

Appeal from a judgment of the superior court for Adams county, Truax, J., entered October 10, 1919, in favor of the defendants, dismissing an action on promissory notes, tried to the court.   Affirmed.

*Adams & Miller,* for appellant.

*Hamblen & Gilbert,* for respondents.

[1] Reported in 192 Pac. 914.

BRIDGES, J.—Appellant brought suit against respondents to recover a judgment of $3,550, being the amount of three promissory notes given by respondents to Blewett Harvester Company. The court denied appellant any relief and ordered the notes canceled. The suit was originally begun by Blewett Harvester Company. Later it was thrown into bankruptcy and the trustee was substituted as plaintiff.

The facts are substantially as follows: In 1917, respondents were extensive wheat growers, and the harvester company wished to sell them one of its combined harvesters for $3,550. Its representative informed respondents that it had such a machine on the farm of a neighbor some miles from respondents' place, and that such machine was practically a new one, but needed some repairs. At the request of the company, respondents, on the 9th or 10th day of August, 1917, obtained the machine from the neighboring farm and brought it to their own place. On that day, or possibly the day following, at the request of the agent of the company, respondents gave to it their written order for a new combined harvester, to be shipped to them from Pendleton, Oregon. This order was to become a contract of purchase when accepted by the company at its home office. The order further provided that, upon the arrival of the machinery, respondents should give their three promissory notes, each to be dated August 10, 1917, one falling due on the date of its execution, another in one year, and the third in two years from date, and these notes were to be secured by a chattel mortgage on the machinery ordered. The order further provided that the title should remain in the company until settlement was made, that the combined harvester was warranted to be made of good material and would do good work under favorable conditions, and

that if, on six days' trial, the machine failed to work satisfactorily, the purchaser should give written notice to the company at its home office at Pendleton, Oregon, stating in what respects the machine failed in the warranties, and that thereafter the company should have a reasonable time in which to make the machine do satisfactory work, and if it could not ultimately be made to work properly, the purchasers were to deliver it to the company at Pendleton and receive a new machine in its stead, upon like terms, or the return of any purchase price paid or notes given. The order further provided that a continued use of the machine for six days, without notice of defect, should be conclusive evidence that the warranties had been complied with; and that no warranties, representations or statements not contained in the order or contract should be binding on the company unless reduced to writing and approved by it at its head office. The order has written on it at this time an acceptance by the company, but the record fails to show when the acceptance was made, or that respondents were ever notified that the company had accepted it. The chattel mortgage provided for in the order was never given or requested to be given. Simultaneously with the giving of this order, respondents made, executed and delivered to the company their three promissory notes, which as to date and terms were as provided in the order.

It appears from the evidence that the company had previously sold this particular harvester to the neighbor from whom respondents obtained it, but he had refused to keep it because it would not do satisfactory work. It further appears that, at that time, the machine was very much out of repair. Respondents appear to have known that the machine needed some minor repairs, but were not acquainted with the fact

that it had not given satisfactory service to the neighbor, or that it was not, generally speaking, in working condition. It was understood between the company and respondents that the company would be required to, and would, make certain necessary repairs in order to put the machine in condition for operation, and that the company would send to respondents' place an expert for this purpose. This expert arrived at once and proceeded to make the necessary adjustments and repairs. He worked in this manner for two or three days before any attempt was made to put the harvester in the field. It was then taken to the field, where the expert continued to operate it for ten or twelve days. During all of this time the machine was working very unsatisfactorily, and the expert was quite constantly aligning and adjusting it and making repairs. Meanwhile the harvester was cutting and threshing grain in an unsatisfactory manner. After operating it for some ten days or more in this manner, the expert informed respondents that he could not make the harvester do reasonably good work, and that he did not believe any one else could, and directed that it be driven to the barn and surrendered to the company. At once thereafter, respondents notified the local agent of the company that the harvester was unsatisfactory and would not comply with the warranties, and that the work had ceased and the machine was at their place, where the company could obtain it. At about the same time the expert gave verbal notice to the home office of the company of the unsatisfactory work of the harvester. Very shortly thereafter this suit was brought. There is much dispute in the testimony as to whether the machine complied with the warranties of the contract. A careful reading of the record convinces us that it did not. Our conclusion in this regard is supported by the opinion of the trial judge.

While the facts are greatly in dispute, yet a careful reading of the record convinces us that the weight of the testimony substantiates the facts as we have outlined them.

We are satisfied that there was no consideration for the notes sued on. According to the order or contract, they were not to be given until there was a delivery of the machinery; and, in our opinion, there never was any delivery thereof to respondents. All the parties knew that the harvester was out of repair, and that it would require certain expert work to put it in reasonably suitable condition. For this purpose the company sent its agent and expert to respondents' place. All the time the machine was there, this expert was working on it and trying to get it in condition for delivery; and he finally gave up the task and directed that the machine be taken to the barn and surrendered to the company. During all of this time the machine was in the possession of the harvester company through its agent and expert. The testimony clearly shows that the first note, which, according to its terms, was due on the day it was given, was not to be paid until the harvester was made to work properly. An officer of the company testified that respondents were willing to get the machine, "but wanted to get a good chance to try it out for a few days before he actually paid the note—before the note became due." Plainly, it was not in the minds of the parties that the machine was to be considered as delivered in the condition it was when the notes were given, or until it had been repaired and put in shape to do reasonably satisfactory work. This is shown by the facts: That the contract itself does not at all fit the facts of the case; that the machine was not a new one, and was not to be shipped from the factory as the contract provided; that it

needed quite extensive repairs; that respondents brought it to their place at the special instance and request of the company's agent; that it agreed to, and did, send an expert to put the machine in order; that the company had never notified respondents that it had accepted the order and thus made it a contract, or furnished respondents with a copy thereof; and that the chattel mortgage provided for in the contract was not given or requested. All these, and other facts, show that there had been no delivery of the machine and no consideration for the notes.

Appellant argues, however, that the harvester could not have been in its possession, through its agent, because the company paid his wages for only the first two or three days that he was working with the machine and respondents paid them thereafter. This fact is, however, neither conclusive nor persuasive. The agent himself informed respondents that it was proper and customary for the purchaser to make payment to the expert or agent after the first two or three days. The conclusion to which we have thus come would require an affirmance of the judgment. But if it should be conceded that there had been a complete delivery of the harvester and that the contract had been accepted and was in force, appellant is in no position to recover on the notes. Under the contract, respondents were entitled to have a machine which was made of good material and which would "do good work when properly operated under favorable circumstances;" and we find that they did not get such a machine.

But it is earnestly argued by appellant that respondents are in no position to now claim that the harvester did not comply with the warranties, because they did not live up to that portion of the contract which pro-

vided that, "if, upon six days trial said combined harvester does not fill the above warranty, the undersigned (respondents) shall give immediate notice by registered letter to Blewett Manufacturing Company," at Pendleton, stating wherein the harvester failed to comply with the warranty, so that an expert might be sent by the company to put the machine in order, and if, finally, it could not be made to do proper work, respondents should deliver it to the company at Pendleton and receive another machine under the same terms and conditions. It is stated that respondents did not give the notice within the six days, and did not give any written notice at all to the company at Pendleton, or to any one else, and did not return the machine to the company at Pendleton; and that, under the contract, respondents could not claim that the machine was unsatisfactory, or did not comply with the warranties, until these notices had been given exactly as provided in the contract. But the time for giving the notice had not expired when the company demanded payment on the first note and threatened suit thereon, because, during all of this time, the company had its expert at work on the machine, making repairs and trying to put it in running order. The purpose of requiring the purchaser to give the notice mentioned in the contract had been fulfilled. The company knew, through its agent and expert, that the machine was not in working order. This notice provided by the contract was intended to be applicable only when the company had delivered a new machine from its factory and one which was in running order. It was not meant to apply to such facts as existed here; and, if it should be held that it was meant to apply to such facts, the company had waived the necessity for the giving of the notice by having its expert at work on the machine during the whole of the period.

Nor were respondents, under the facts of this case, required to deliver the machine to the company at Pendleton, as, it is contended, the contract provided, because the company, after it was informed and had knowledge that the machine was not in working order and would not comply with the warranty of the contract, wrote to respondents, claiming that it did comply with the contract, demanding payment at once of the first note, and threatening suit if such payment were not made. By its conduct, the company had waived the conditions of the contract with reference to delivery of the machine at Pendleton.

We are satisfied that the judgment of the trial court was correct. It is affirmed.

HOLCOMB, C. J., FULLERTON, TOLMAN, and MOUNT, JJ., concur.